# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
### PORTLAND DIVISION

| | | |
|---|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY, a Delaware corporation | ) ) | No. 03:12-cv-01104-HU |
| Plaintiff, | ) ) ) | **ORDER ON MOTION TO DISMISS AMENDED LANHAM ACT COUNTERCLAIM** |
| VS. | ) ) | |
| HERAEUS PRECIOUS METALS NORTH AMERICA CONSHOHOCKEN LLC, a Delaware corporation; and SOLARWORLD INDUSTRIES AMERICA, INC., an Oregon corporation; | ) ) ) ) ) ) | |
| Defendants. | ) | |

Peter E. Heuser
Devon Zastrow Newman
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 S.W. 5th Avenue, Suite 1900
Portland, OR 97204

Matthew W. Brewer
Sean G. Gallagher
Adam K. Mortara
Asha L.I. Spencer
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654

       Attorneys for Plaintiff

Steven K. Blackhurst
ATER WYNNE LLP
1331 N.W. Lovejoy Street, Suite 900
Portland, OR 97209-3280

Maximillian A. Grant
Matthew J. Moore
Lisa Limor Rabie
Elizabeth M. Roesel
Gregory K. Sobolski
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004

1 - ORDER

Alexander C. Johnson, Jr.
MARGER JOHNSON & McCOLLOM P.C.
210 S.E. Morrison Street, Suite 400
Portland, OR 97204-3189

    Attorneys for Defendants

HUBEL, Magistrate Judge:

  The plaintiff E.I. Du Pont de NeMours and Company ("DuPont") sues the defendants Heraeus Precious Metals North America Conshohocken LLC ("Heraeus") and SolarWorld Industries America, Inc. ("SolarWorld"), alleging infringement of DuPont's patent for a conductive metallization paste used in the production of photovoltaic solar cells, U.S. Patent No. 8,158,504 ("the '504 Patent"). In Heraeus's original Answer, it asserted three counterclaims, the third of which alleged DuPont had violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in connection with statements made by DuPont in a press release it issued on July 19, 2012. *See* Dkt. #25, Counterclaims, ¶¶ 22-26. The court granted DuPont's motion to dismiss that counterclaim because Heraeus had failed to allege a required element; i.e., that DuPont acted in bad faith. *See* Dkt. # 64, p. 10 (citing, *inter alia CollegeNET, Inc. v. Xap Corp.*, 2004 WL 2303506, at *10 (D. Or. Oct. 12, 2004)). The dismissal was without prejudice to Heraeus's amendment of the counterclaim to allege bad faith.

  On March 1, 2013, Heraeus filed its Amended Answer, Affirmative Defenses and Counterclaims. Dkt. #70. Heraeus now asserts two counterclaims for unfair competition under the Lanham Act, one entitled "Bad Faith Marketplace Statements Regarding Intellectual

2 - ORDER

Property Theft" (Count III, the **"IP Theft Counterclaim"**), and the other entitled "Bad Faith Marketplace Statements Regarding Patent Infringement" (Count IV, the **"Patent Infringement Counterclaim"**). *Id.*, Counterclaims, ¶¶ 21-43. The matter before the court is DuPont's motion to dismiss these two counterclaims for failure to state a claim for which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. #82. DuPont claims Heraeus's amendment suffers from the same defect as before; i.e., failure to plead bad faith properly. In addition, DuPont claims Heraeus's new allegations relating to DuPont's alleged communications to Heraeus's Taiwanese customers fail to state an actionable claim. *See id.*

### *STANDARDS FOR MOTIONS TO DISMISS*

#### *General Standards*

Chief Judge Aiken of this court set forth the standard for the court's consideration of a motion to dismiss in *Gambee v. Cornelius*, No. 10-CV-6265-AA, 2011 WL 1311782 (D. Or. Apr. 1, 2011) (Aiken, C.J.). Judge Aiken observed:

> Under Fed. R. Civ. P. 12(b)(6), a complaint is construed in favor of the plaintiff, and its factual allegations are taken as true. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[O]nce a claim has

3 - ORDER

> been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563[, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929] (2007). "[G]enerally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint." *Daniels-Hall*, 629 F.3d at 998.

*Id.* at *2.

### *Consideration of Matters Outside the Pleadings*

"As a general matter, a district court may not consider any material outside of the pleadings when ruling on a Rule 12(b)(6) motion." *O'Connell-Babcock v. Multnomah County, Oregon*, No. 08-cv-459-AC, slip op., 2009 WL 1139441 at *4 (D. Or. Apr. 24, 2009) (King, J.) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). However, the Ninth Circuit recognizes two exceptions to this rule. First, the court may consider documents "'whose contents are alleged in a [pleading] and whose authenticity no party questions, but which are not physically attached to the . . . pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)), *superseded by statute on other grounds as recognized in Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006); *accord Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citing *Parrino*); *Vanguard Prods. Group v. Merchandising Technologies, Inc.*, slip op., 2008 WL 939041, at *3 (D. Or. Apr. 3, 2008) (Brown, J.) (same; quoting *Lee*).

In the current case, Heraeus's Lanham Act counterclaims arise, in part, from statements made by DuPont in a press release issued on July 19, 2012. A copy of the press release is attached as

4 - ORDER

Exhibit 1 to the Declaration of Matthew W. Brewer in support of DuPont's Motion to Dismiss. Dkt. #84-1. Because Heraeus makes allegations regarding the press release and the language of the press release is integral to Heraeus's Lanham Act counterclaims, and further because its authenticity is not at issue, the court may consider the press release in ruling on DuPont's motion to dismiss. *See Parrino, supra.*

"Second, under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record'" in considering a motion to dismiss. *Lee*, 250 F.3d at 688-89 (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)). A district court's decision regarding whether to take judicial notice of documents is reviewed for abuse of discretion. *Id.*

In connection with the present motions, DuPont asks the court to take judicial notice of two types of documents it asserts are "matters of public record." These include (1) a criminal indictment of Tung Pham, Heraeus's former head of R&D, charging him with theft of trade secrets, *see* Dkt. #84-3; and (2) public documents relating to prosecution of the '254 Patent, *see* Dkt. #84-2. The court will take judicial notice of these documents for purposes of the current motions.

DuPont further asks the court to take judicial notice of some of Heraeus's discovery responses. DuPont has not cited any authorities from this court or the Ninth Circuit Court of Appeals in support of its request, although it has cited two cases from federal district courts in Connecticut and California, in which those courts indicated discovery responses may be considered on a Rule 12(b)(6) motion. *See* Dkt. #83, p. 10 (citing *Harris v.*

5 - ORDER

*Stonecrest Care Auto Ctr., LLC*, 559 F. Supp. 2d 1088, 1089 (S.D. Cal. 2008); *Steiner v. Shawmut Nat'l Corp.*, 766 F. Supp. 1236, 1241 n.13 (D. Conn. 1991)). The court finds discovery responses are a type of materials "outside the pleadings" that would require the court to treat DuPont's motion to dismiss as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). The court declines to embark on that course of action at this juncture. Therefore, these discovery responses are not considered on this motion to dismiss.

### ***DISCUSSION***

Heraeus's Lanham Act counterclaims are based on representations it alleges DuPont made concerning Heraeus and its products. Both of the counterclaims allege DuPont misrepresented the legitimacy of Heraeus's products in the press release. The press release is titled, "DuPont Addresses Patent Protection at Solarbuzz China Conference; Intellectual Property Theft Growing in Competitive Climate of Photovoltaics." *Id.* According to Heraeus, the release was issued and published on the internet, and also distributed by DuPont directly to DuPont's and Heraeus's customers via email.

Among other things, the press release discusses the growth of intellectual property theft in the photovoltaic industry, and mentions that DuPont filed the present case for patent infringement against Heraeus. In pertinent part, the release states as follows:

> Shanghai, July 19, 2012 - DuPont Electronics & Communications Managing Director for Greater China, Walt Cheng, was a featured speaker today at the Solarbuzz China Photovoltaics (PV) Conference in Shanghai. In addressing the importance of materials supply in PV manufacturing, Cheng emphasized the critical role

6 - ORDER

    innovation plays in advancing the solar energy industry, and the growing significance of intellectual property protection in today's increasingly competitive PV market.

    ". . . . Intellectual Property (IP) theft is widespread and the issue seems to be growing in the current climate of this industry. IP theft, left unchecked, has the potential to threaten the PV industry broadly at a critical time in its development. Everyone at every level in the industry benefits from vigorous competition that spurs innovation, bringing cutting-edge products to the global market. IP theft diminishes competition and reduces innovation. If there is no longer an incentive for companies to deliver new innovations, the progress we've made together to accelerate the growth of solar energy can stall."

    . . .

    "As DuPont continues to develop new technology, we need to ensure it is protected," said Cheng. "We do not ignore infringement and will pursue aggressively other points in the PV supply chain where IP infringement of our PV metallization pastes exists."

    Cheng indicated this set of actions continues in the manner of previous DuPont actions involving IP protection in China and other countries in the world. The company recently filed two lawsuits against PV metallization paste supplier Heraeus and one against its customer SolarWorld, for infringing on DuPont patents for DuPont™ Solamet® PV metallization pastes.

    Cheng asked for increased support from the industry to guard against infringement and stronger opposition to the use of "infringing" materials in the production and sale of downstream products by cell and module makers, PV system developers, installers and owners. Infringing companies expose themselves, and potentially others they do business with, to the full range of legal remedies.

Dkt. #84-1, pp. 1-2. Heraeus claims DuPont's intimation that Heraeus has committed theft of intellectual property and infringed DuPont's patents is false; the statements were made for the purpose

7 - ORDER

of confusion and mistake; and Heraeus has been damaged by DuPont's statements. *See* Dkt. #70, Counterclaims, ¶¶ 21-28.

Most of Heraeus's allegations in the IP Theft Counterclaim regarding the press release mirror the allegations Heraeus made in its previously-dismissed Lanham Act Counterclaim. To address the court's finding that Heraeus must allege DuPont acted in bad faith, Heraeus has added the following to the IP Theft Counterclaim:

> 27. DuPont's marketplace statements accusing Heraeus of intellectual property theft were made in bad faith. DuPont's July 19th press release states by necessary implication that DuPont brought two lawsuits against Heraeus for redress of "intellectual property (IP) theft." DuPont knew or should have known that this statement is literally false. Theft, according to Oregon Revised Statute § 164.015 and the common law, requires pleading and proof of intent or mens rea. Neither of DuPont's complaints, however, alleges any type of theft or even intentional infringement of DuPont's patents. Instead, DuPont's Oregon complaint omits any allegation of willful infringement and does not even allege pre-suit knowledge of the '504 patent by Heraeus. DuPont knew that Heraeus could not possibly have stolen what it did not know existed, so DuPont's false representations otherwise constitute bad faith. Although DuPont's Delaware complaint originally included an allegation of willfulness, DuPont withdrew that allegation when pressed, conceding that "DuPont does not at this time assert a claim for willful infringement." [Citation omitted.] DuPont's bad faith is further demonstrated by the fact that DuPont published false accusations of "intellectual property (IP) theft" after having conceded that it was not asserting willful infringement against Heraeus.

Dkt. #70, Counterclaims, ¶ 27.

The Patent Infringement Counterclaim also contains allegations relating to the press release, *see* Dkt. #70, Counterclaims, ¶¶ 31, 36-39 & 41-43. In addition, Heraeus alleges DuPont made certain

8 - ORDER

communications to four of Heraeus's customers in Taiwan, regarding DuPont's U.S. Patent No. 7,767,254 (the "'254 patent"), as follows:

> 32. On information and belief, DuPont falsely represented to Heraeus'[s] Customer No. 1 in Taiwan, either directly or through DuPont's customer (Customer No. 2 in China), that Heraeus infringes [the '254 Patent], which has been asserted against Heraeus in U.S. District Court in Delaware, and that DuPont is very confident about its ability to win in court against Heraeus. On information and belief, DuPont's statements were intended to unlawfully coerce Customer No. 1 from purchasing photovoltaic paste from Heraeus.

> 33. On information and belief, DuPont communicated to Heraeus'[s] Customer No. 3 in Taiwan that it may be accused of willful infringement of the '254 patent, if Customer No. 3 continues to purchase and use Heraeus'[s] products. On information and belief, DuPont's statements were intended to unlawfully coerce Customer No. 3 from purchasing photovoltaic paste from Heraeus. DuPont's July 19th press release caused Customer No. 3 to be concerned about continuing to do business with Heraeus.

> 34. On information and belief, DuPont approached Heraeus'[s] Customer No. 4 in Taiwan and stated that DuPont expects to sue Heraeus for patent infringement based on its 9600 series products and that DuPont is very confident that it will win. On information and belief, DuPont's statements were intended to unlawfully coerce Customer No. 4 from purchasing photovoltaic paste from Heraeus.

> 35. On information and belief, DuPont threatened litigation against Heraeus'[s] Customer No. 5 in Taiwan, if it continues to purchase paste from Heraeus, rather than buying from DuPont. On information and belief, DuPont's statements were intended to unlawfully coerce Customer No. 5 from purchasing photovoltaic paste from Heraeus. After receiving DuPont's threats and seeing DuPont's July 19th press release, Customer No. 5 was concerned about continuing to do business with Heraeus.

> 36. DuPont's communications to Customers Nos. 1 to 5 and July 19th press release misled

9 - ORDER

        these customers into believing that Heraeus infringes DuPont's patents, causing them to be reluctant to continue to purchase photovoltaic paste from Heraeus. Customers Nos. 1 to 5 together with the other customers who were deceived by DuPont's July 19th press release and communications, represent a significant portion of the purchasers of front side silver photovoltaic paste.

*Id.*, ¶¶ 32-36. In subsequent paragraphs, Heraeus claims DuPont's communications and representations set forth in the quoted paragraphs were made in bad faith because DuPont knew or should have known they were false, and the statements were intended to discredit Heraeus and its products and promote DuPont's own competing products. *See id.*, ¶¶ 37-43.

    To prevail on its claims that DuPont violated Section 43(a) of the Lanham Act, Heraeus must show DuPont made marketplace statements or representations that contained a "false or misleading description of fact, or false or misleading representation of fact," which:

    (A)  is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    (B)  in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]"

15 U.S.C. § 1125(a)(1).

    In *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997), the Ninth Circuit set out the elements of a Section 43(a) false advertising claim, as follows:

10 - ORDER

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. . . . To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers. *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943, 946 (3d Cir. 1993)[.]

*Southland*, 108 F.3d at 1139 (footnote, internal citations omitted). In addition, "before a patentee may be held liable under § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith." *CollegeNET*, 2004 WL 2303506, at *10 (internal citations and quotation marks omitted).

The court previously found that Heraeus's allegations regarding the press release met these pleading standards except for the requirement that Heraeus allege DuPont's bad faith. In its current motion, DuPont has raised the issue of whether Heraeus has pled bad faith properly. DuPont argues that because a bad faith claim is grounded in fraud, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies, and Heraeus has failed to meet its obligation to plead DuPont's alleged bad faith with particularity. *See* Dkt. #83.

11 - ORDER

In *CollegeNET, Inc. v. Xap Corp.*, 2004 WL 2303506 (D. Or. Oct. 12, 2004), I held that where a Lanham Act plaintiff alleges "a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of the claim," then "the claim is 'grounded in fraud,' and the heightened pleading standard of Rule 9(b) applies." *Id.*, 2004 WL 2303506, at *5; *accord Vanguard Prods. Group v. Merchandising Technologies, Inc.*, 2008 WL 939041, at *4 (D. Or. Apr. 3, 2008) (Brown, J.). "'Rule 9(b) applies to "all averments of fraud or mistake"; it requires that "the circumstances constituting fraud . . . be stated with particularity" but provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."'" *Learning Internet v. Learn.com, Inc.*, 2008 WL 2037282, at *2 (D. Or. May 6, 2008) (Marsh, J.) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319, 127 S. Ct. 2499, 2507, 168 L. Ed. 2d 179 (2007), in turn quoting Fed. R. Civ. P. 9(b)). In *CollegeNET*, I discussed what is necessary to plead fraud with sufficient particularity:

> As noted in *Vess [v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)], "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106 (internal quotation omitted). Under Rule 9(b), a complaint must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-92 (9th Cir. 1989). Additionally, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994). The plaintiff must also show that the statement complained of was false or

12 - ORDER

          misleading at the time it was made. *Id.* at 1548-49.

*CollegeNET*, 2004 WL 2303506, at *6.

Applying these pleading standards to Heraeus's Lanham Act counterclaims requires examination of Heraeus's specific allegations regarding DuPont's alleged bad faith. In the IP Theft Counterclaim, Heraeus alleges the following:

- DuPont "made material false representations regarding Heraeus'[s] front side silver photovoltaic paste products" by issuing the press release, "targeted at Heraeus'[s] customers." The press release was issued on July 19, 2012, and its language "necessarily implies" that Heraeus's "photovoltaic metallization pastes are the result of Heraeus'[s] alleged 'IP theft.'" The language of the press release further "threatens legal action" against customers who use "infringing materials."

- DuPont distributed the press release widely, including publishing it on the Internet and distributing it directly to DuPont's and Heraeus's customers.

- DuPont's statements in the press release were made in bad faith because DuPont "knew or should have known" that Heraeus has not committed IP theft, evidenced by DuPont's withdrawal, in the Delaware lawsuit, of any claim for "willful infringement," and its failure to include any claim of willful infringement in the present action. DuPont has not alleged Heraeus had any pre-suit knowledge of the '504 patent, and thus "knew that Heraeus could not possibly have stolen what it did not know existed."

Dkt. #70, ¶¶ 23-27. The court finds these allegations meet Rule 9(b)'s heightened pleading standards. Heraeus has identified the who, what, when, where, why, and how of its bad faith claim.

In the Patent Infringement Counterclaim, Heraeus again alleges DuPont made false representations in the press release, but further alleges DuPont made specific communications with four of Heraeus's customers in Taiwan. Heraeus alleges DuPont's statements and

13 - ORDER

accusations regarding Heraeus and its products "were false and misleading and were made in bad faith," *id.*, ¶ 39, and then sets out the following specific allegations regarding why DuPont "knew or should have known that its accusations of infringement in its July 19, 2012 press release and its communications to Heraeus'[s] customers [were] false":

> 40. With respect to the '254 patent asserted against Heraeus in Delaware, DuPont knew or should have known that the patent is invalid over prior art methods of making solar cell electrodes. On information and belief, before the priority date of the '254 patent, DuPont manufactured, used and sold back side paste containing silver particles with a specific surface of $0.20$-$0.60 m^2/g$, and, at the time it brought suit against Heraeus, DuPont knew or should have known that the '254 patent is invalid as anticipated by DuPont's own prior commercial activities. No objectively reasonable basis exists for concluding that DuPont's prior manufacture, use and sale of such back side paste does not anticipate the claims of the '254 patent. There is no language in the body of the '254 patent claims that limits their scope to front side paste. The preamble of the claim is presumptively not limiting, and there is no disclaimer, disavowal or other statement in the prosecution history that limits the claims to front side paste. Accordingly, DuPont could not have formed a subjective good faith belief that the '254 patent is valid in view of DuPont's prior manufacture, use and sale of back side paste.
>
> 41. With respect to the '504 patent asserted against Heraeus in this action, DuPont knew or should have known that Heraeus does not infringe that patent. The claims of the '504 patent require a thick film conductive composition where the organic medium contains "one or more components selected from the group consisting of: Bis(2-(2Butoxyethoxy)Ethyl)Adipate, dibasic ester, Octyl Epoxy Tallate, isotetradecanol, and pentaerythrito ester of hydrogenated rosin." If DuPont had adequately investigated its claim prior to filing suit, it would have known that Heraeus'[s] commercial paste products to not contain any of these chemical

14 - ORDER

1         compounds and do not infringe any of the claims of the '504 patent.

2

3         42. On information and belief, prior to filing its complaint in this action, DuPont tested samples of the following Heraeus[] commercial paste products: 9235, 9257 and 9411. After the complaint was filed, DuPont tested additional samples of these same products and concluded that it would not continue to pursue its infringement claim. The formulations for these products have never contained any of the chemical compounds listed in the preceding paragraph. Furthermore, Heraeus stopped selling the 9257 product prior to the issue date of the '504 patent. Therefore, if DuPont had adequately investigated its claim prior to filing suit, it would have known that Heraeus does not infringe any of the claims of the '504 patent. DuPont could not possibly have formed a subjective good faith belief that Heraeus infringed the '504 patent.

13 *Id.*, ¶¶ 40-42.

14     Many of DuPont's arguments in support of its motion to dismiss the Patent Infringement Counterclaim go more to the merits of Heraeus's claims than to the pleading standards. For example, DuPont claims "Heraeus has admitted to using and shipping infringing front-side paste formulations," and Heraeus has made certain additional admissions in its discovery responses. Dkt. #83, pp. 9-10 (citing Heraeus's discovery responses). As discussed above, the court declines to take judicial notice of Heraeus's discovery responses for purposes of DuPont's motion to dismiss. DuPont also relies on its own conclusory assertion that "Heraeus has infringed DuPont's '504 Patent." *Id.*, p. 11. The issue of whether Heraeus has infringed the '504 Patent is the very object of this case.

27     DuPont also claims its statements in the press release regarding IP theft "are true because Heraeus's former R&D head is

15 - ORDER

under criminal indictment for converting trade secrets *to benefit Heraeus*." Dkt. #83, p. 12 (emphasis added). There is nothing in the Indictment to indicate the criminal defendant's actions were taken on behalf of, or to benefit, Heraeus. On the contrary, the indictment in question alleges the defendant took actions in direct violation of his employment agreement with Heraeus, suggesting Heraeus may well be the victim, not the beneficiary, of his actions.

With regard to Heraeus's allegations concerning DuPont's communications to Heraeus's customers in Taiwan, DuPont further argues Heraeus has failed to plead that the alleged statements had "a substantial effect on commerce within the scope of Congress's power," and thus, Heraeus has failed to plead DuPont's alleged statements were made "in commerce" as contemplated by the Lanham Act. Dkt. #83, p. 16 (citing *Kiobel v. Royal Dutch Petrol. Co.*, ___ U.S. ___, 133 S. Ct. 1659 (2013)[1]). DuPont further argues its alleged statements to Heraeus's customers in Taiwan did not constitute "commercial advertising or promotion," as protected by 15 U.S.C. § 1125(a)(1). *Id.*, pp. 12-15.

Heraeus responds that its allegations regarding DuPont's communications to the Taiwanese customers should not be considered in isolation; rather, Heraeus made those allegations as further

---

[1] DuPont has not included a parenthetical, or any discussion, to indicate how it contends *Kiobel* supports its argument. If *Kiobel* offers any support at all, it would be in *dicta*; the case concerns "whether and under what circumstances courts may recognize a cause of action under the Alien Tort Statute, for violations of the law of nations occurring within the territory of a sovereign other than the United states." 133 S. Ct. at 1662. This court finds nothing in the *Kiobel* opinion sufficiently relevant to the current motion to dismiss to warrant discussion.

16 - ORDER

support for its claim that DuPont has engaged in widespread dissemination of its damaging communications to the relevant marketplace. The court agrees with Heraeus. In the Patent Infringement Counterclaim, Heraeus is not seeking damages for discrete instances of DuPont's communications with the Taiwan customers; it is seeking damages for DuPont's alleged widespread dissemination of damaging communications in the relevant marketplace.

DuPont has correctly cited relevant case law with regard to the identification of "commercial speech," but has drawn erroneous conclusions from those cases. In *Coastal Abstract Service, Inc. v. First American Title Insurance Co.*, 173 F.3d 725 (9th Cir. 1999), the court adopted as "accurate and sound" the following criteria "for determining whether representations constitute 'commercial advertising or promotion'":

> In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry."

*Id.*, 173 F.3d at 734 (quoting *Gordon & Breach Science Pubs. v. Am. Inst. of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994)); *see Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996) (adopting the *Gordon & Breach* criteria); *see also Cook, Perkiss and Liehe, Inc. v. Northern Calif. Coll. Serv., Inc.*, 911 F.2d 242, 245 (9th

17 - ORDER

Cir. 1990) (recognizing that a Lanham Act claim for false advertising "extends to false representations made by implication or innuendo"; citations omitted). DuPont also cites *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002), where the court held "the touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market." *Id.*, 314 F.3d at 57.

Heraeus has alleged facts supporting a reasonable inference that DuPont has engaged in "an organized campaign to penetrate the relevant market." *Id.* Heraeus claims DuPont's alleged communications to the relevant marketplace include a combination of the press release and DuPont's representations to Heraeus's individual customers, allegedly made for the specific purpose of influencing customers to buy DuPont's products rather than Heraeus's. *Cf., e.g., Synthes, Inc. v. Emerge Medical, Inc.*, 2012 WL 4205476 (E.D. Pa. Sept. 19, 2012) (noting defendant's communications, "taken in isolation . . . appear[ed] to identify only sporadic instances of dissemination," but a closer reading raised "reasonable inferences . . . that they merely exemplif[ied] a broad and widespread dissemination of the statements to the relevant purchasing public, such that they constitute[d] advertising or promotion within the industry"). For this purpose, in the context of this case, it is irrelevant whether the customers with whom DuPont allegedly communicated were located within or outside of the United States. There is no dispute that DuPont and Heraeus are both American corporations engaged in commercial competition.

18 - ORDER

Nevertheless, for purposes of testing the adequacy of Heraeus's pleading, its allegations regarding DuPont's communications with the Taiwanese customers fail to meet Rule 9(b)'s requirements. At oral argument, Heraeus indicated it had not made its allegations more specific regarding these communications for "confidentiality" reasons. If Heraeus fears it would violate some privilege, protective order, or other legitimate "confidentiality" concern, it could file its pleading in redacted form in the public record, with an unredacted version filed under seal. It cannot, however, fail to comply fully with Rule 9(b)'s requirements that its bad faith claims be made with sufficient particularity. Accordingly, DuPont's motion to dismiss will be granted as to Heraeus's Patent Infringement Counterclaim ("Count IV").

In conclusion, DuPont's motion to dismiss is **denied** as to Heraeus's Counterclaim Count III, the IP Theft Counterclaim, and **granted** as to Heraeus's Counterclaim Count IV, the Patent Infringement Counterclaim. Heraeus will be granted one additional opportunity to plead the Patent Infringement Counterclaim with sufficient particularity to comply with Rule 9(b). Its amended counterclaim must be filed **by June 21, 2013**.[2]

IT IS SO ORDERED.

Dated this 7th day of June, 2013.

/s/ Dennis J. Hubel

_____
Dennis James Hubel
Unites States Magistrate Judge

---

[2] The court will rule on DuPont's motion for Rule 56(d) discovery in a separate order.

19 - ORDER