**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | | |
|---|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY, a Delaware corporation | ) ) ) | No. 03:12-cv-01104-HU |
| Plaintiff, | ) ) | **ORDER ON MOTION FOR DISCOVERY** |
| vs. | ) ) | **UNDER FED. R. CIV. P. 56(d)** |
| HERAEUS PRECIOUS METALS NORTH AMERICA CONSHOHOCKEN LLC, a Delaware corporation; and SOLARWORLD INDUSTRIES AMERICA, INC., an Oregon corporation; | ) ) ) ) ) ) | **AND ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | ) | |

Peter E. Heuser
Devon Zastrow Newman
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 S.W. 5th Avenue, Suite 1900
Portland, OR 97204

Matthew W. Brewer
Sean G. Gallagher
Adam K. Mortara
Asha L.I. Spencer
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654

       Attorneys for Plaintiff

Steven K. Blackhurst
ATER WYNNE LLP
1331 N.W. Lovejoy Street, Suite 900
Portland, OR 97209-3280

Maximillian A. Grant
Matthew J. Moore
Lisa Limor Rabie
Elizabeth M. Roesel
Gregory K. Sobolski
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004

1 - ORDER

Alexander C. Johnson, Jr.
MARGER JOHNSON & McCOLLOM P.C.
210 S.E. Morrison Street, Suite 400
Portland, OR 97204-3189

        Attorneys for Defendants

HUBEL, Magistrate Judge:

    The plaintiff E.I. Du Pont de NeMours and Company ("DuPont") sues the defendants Heraeus Precious Metals North America Conshohocken LLC ("Heraeus") and SolarWorld Industries America, Inc. ("SolarWorld"), alleging infringement of DuPont's patent for a conductive metallization paste used in the production of photovoltaic solar cells, U.S. Patent No. 8,158,504 ("the '504 Patent"). The defendants have moved for summary judgment of non-infringement, as to both literal infringement and infringement under the doctrine of equivalents ("DOE"). Dkt. #73.

    Currently before the court is DuPont's motion pursuant to Federal Rule of Civil Procedure 56(d), seeking additional discovery DuPont claims is "necessary to provide a complete record to the Court for its ruling." Dkt. #86, p. 2. The defendants oppose the motion, arguing no additional discovery is necessary for DuPont to respond to their summary judgment motion, or for the court to rule on the motion. The defendants claim DuPont has admitted it does not have any claim for literal infringement, and no additional discovery is necessary because the defendants' "summary judgment

2 - ORDER

motion turns on threshold legal questions" regarding applicability of the DOE.  Dkt. #94, ECF p. 2.

### *STANDARDS*

Federal Rule of Civil Procedure 56(d) provides that when a party "cannot present facts essential to justify its opposition" to a summary judgment motion, the court may take one of three actions: (1) "defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  To obtain the relief afforded by Rule 56(d), a litigant, "'faced with a summary judgment motion, shows the court by affidavit or declaration that "it cannot present facts essential to justify its opposition."'" *Internat'l Longshore & Warehouse Union v. Port of Portland*, slip op., 2013 WL 1412882, at *10 (D. Or. Apr. 8, 2013) (Simon, J.) (quoting *Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d 887, 899 (9th Cir. 2012), in turn quoting Fed. R. Civ. P. 56(d)).  "A party requesting a continuance pursuant to [former] Rule 56(f) [now 56(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) (citations omitted).  "[A] district court's order denying additional discovery [is reviewed] for abuse of discretion." *Id.*

A district court does not abuse its discretion in denying a request for additional discovery under Rule 56(d) if the party's request is "vague and the discovery sought [does] not relate to the legal issues presented on summary judgment." *Demaree v. Wal-Mart*

3 - ORDER

*Stores, Inc.*, slip op., 2013 WL 1037269, at *2 (9th Cir. Mar. 15, 2013).

### ***DISCUSSION***

The defendants have moved for summary judgment that Heraeus's "commercial front side photovoltaic paste products" do not infringe any claim of the '504 Patent, either literally or under the DOE. *See* Dkt. ## 73 & 74.  DuPont's request for Rule 56(d) discovery relates to its allegation that Heraeus's "commercial products" infringe the '504 Patent under the DOE.  An understanding of the defendants' opposition to the requested discovery requires a brief examination of the claims of the '504 Patent.

The '504 Patent was issued on April 17, 2012. *See* Dkt. #1-1. The defendants describe the '504 Patent as follows:

> The patent relates to thick film conductive compositions that can be used to form electrically conductive components of semi-conductor devices, such as the metal contacts on the front side (sun side) of a solar cell. Such thick film pastes contain (1) conductive metal powder (such as silver or aluminum), (2) glass frit as an inorganic binder, and (3) an organic medium. . . . A thick film paste can be applied to a substrate, *e.g.*, by screen-printing, and then dried and fired to form electrically conductive metal contacts that form a pattern of conductor lines. . . . In a solar cell, these metal conductor lines carry the electrical current that is generated when the silicon substrate is exposed to sunlight.

Dkt. #74, ECF pp. 6-7 (citations omitted).

The '504 Patent contains 12 claims.  Claim 1 is an independent claim upon which Claims 2 through 8 depend.  Claim 9 is an independent claim upon which Claim 10 depends.  Claim 11 is an independent claim upon which Claim 12 depends. *See* Dkt. #1-1, the '504 Patent,

4 - ORDER

pp. 22-23, cols. 30-32. The claims at issue in this case are the three independent claims: Claim 1, Claim 9, and Claim 11. *See Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 995 (Fed. Cir. 2007) ("infringement of a dependent claim also entails infringement of its associated independent claim"); *Lyons v. Nike, Inc.*, 874 F. Supp. 2d 986, 1002 (D. Or. 2012) (Acosta, MJ) ("The law is clear that where an independent claim is not infringed, a dependent claim also is not infringed." Citation omitted.).

Claim 1 recites:

> 1. A thick film conductive composition comprising:
> a) one or more electrically conductive powders;
> b) one or more glass frits, wherein the $T_g$ of the one or more glass frits is 300-600° C., as measured by Differential Thermal Analysis;
> c) a ZnO additive; and
> d) an organic medium, wherein the organic medium comprises ethyl cellulose and one or more components selected from the group consisting of: Bis(2-(2Butoxy-ethoxy)Ethyl)Adipate, dibasic ester, Octyl Epoxy Tallate, isotetradecanol, and pentaerythritol ester of hydrogenated rosin,
> wherein the ZnO additive is in addition to any ZnO present in the one or more glass frits.

Dkt. #1-1, p. 22, col. 30.

Claim 9 describes a method of manufacturing a particular semiconductor device that requires an organic medium identical to that described in Claim 1(d). *Id.*, p. 23, col. 31. Claim 11 also describes "[a] thick film conductive composition comprising . . . one or more electrically conductive <u>silver</u> powders"; one or more glass frits identical to those described in Claim 1(b); the same requirements as Claim 1 relating to the ZnO additive; and "an organic medium, wherein the organic medium comprises ethyl

5 - ORDER

cellulose and dibasic ester[.]" *Id.* (emphasis added). Thus, all three independent claims require an organic medium consisting of ethyl cellulose plus "one or more" additional components, but for purposes of Claim 11, the additional component is specifically identified as dibasic ester.

The listing of the "additional" ingredients of the organic medium in Claims 1 and 9 is known as a Markush group.* "A Markush group is a listing of specified alternatives of a group in a patent claim, typically expressed in the form: a member selected from the group consisting of A, B, and C. . . .  It is well known that members of the Markush group are . . . alternatively usable for the purposes of the invention." *Abbott Labs. v. Baxter Pharm. Prods., Inc.*, 334 F.3d 1274, 1280 (Fed. Cir. 2003) (internal quotation marks, citation omitted); *see In re Driscoll*, 562 F.2d 1245, 1249 (Cust. & Pat. App. 1977) ("It is generally understood that in thus describing a class of compounds an applicant is, in effect, asserting that the members of the Markush group do not fall within any recognized generic class, but are alternatively usable for the purposes of the invention, and therefore, regardless of which of the alternatives is substituted on the basic structure, the compound as a whole will exhibit the disclosed utility.").

The Federal Circuit has explained that a "Markush group, incorporated in a claim, should be closed, i.e. it must be characterized with the transition phrase "consisting of," rather than

---

*Notably, there is no Markush "doctrine . . . but only a body of case law, emanating from both 'higher' and 'lower' authority, not altogether consistent, the latest decisions tending to carry the most weight as precedent." *In re Harnisch*, 631 F.3d 716, 720 (Cust. & Pat. App. 1980).

6 - ORDER

"comprising" or "including."  *Id.* (internal quotation marks omitted; citing Stephen A. Becker, *Patent Applications Handbook* § 2:17 (9th ed. 2000); *see Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1372 (Fed. Cir. 2005) ("A Markush group by its nature is closed.") (citing *Abbott*, 334 F.3d at 1280). "The phrase 'consisting of' is a term of art in patent law signifying restriction and exclusion, while, in contrast, the term 'comprising' indicates an open-ended construction. . . .  In simple terms, a drafter uses the phrase 'consisting of' to mean 'I claim what follows and nothing else.'  A drafter uses the term 'comprising' to mean 'I claim at least what follows and potentially more." *Vehicular Technologies Corp. v. Tital Wheel Int'l, Inc.*, 212 F.3d 1377, 1382-83 (Fed. Cir. 2000).  In claiming a Markush group, the drafter is effectively indicating that the members of the claimed group are functionally equivalent.  *See Gillette Co., supra*; *cf. Ecolochem, Inc. v. So. Cal. Edison Co.*, 91 F.3d 169 (Table), 1996 WL 297601, at *2 (Fed. Cir. June 5, 1996) ("By claiming a Markush group, Ecolochem has indicated that, for the purpose of claim validity, the members of the claimed group are functionally equivalent.").

The defendants ask the court to find that because the Markush group in the '504 Patent does not specifically list Staybelite 3-E, or any accused product, as an alternative "additional component," DuPont is foreclosed from arguing Staybelite, or any other compound not listed in the Markush group, is an equivalent. Dkt. #94, ECF p. 5.  The defendants argue a finding that any of the accused products is equivalent to any ingredient in the Markush group "would vitiate the Markush Group limitation, which is by nature restricted to the listed compounds." Dkt. #74, ECF p. 23; *see*

7 - ORDER

*generally id.*, ECF pp. 17-27. The defendants argue it is purely a question of law for the court as to whether vitiation would apply to foreclose DuPont's claim of infringement by equivalence, and therefore, DuPont does not need any further discovery in order to respond to the defendants' motion for summary judgment. Dkt. #94, pp. 4-6.

The defendants' argument is overly simplistic, and ignores recent Federal Circuit case law. In *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349 (Fed. Cir. 2012), the court held as follows:

> "Vitiation" is not an exception to the doctrine of equivalents, but instead a legal determination that "the evidence is such that no reasonable jury could determine two elements to be equivalent." [*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8, 117 S. Ct. 1040, 1053 n.8, 137 L. Ed. 2d 146 (1997)]. The proper inquiry for the court **is to apply the doctrine of equivalents**, asking whether an asserted equivalent represents an "insubstantial difference" from the claimed element, or "whether the substitute element matches the function, way, and result of the claimed element." *Id.* at 40, 117 S. Ct. [at 1054]. If no reasonable jury could find equivalence, then the court must grant summary judgment of no infringement under the doctrine of equivalents. *Id.* at 39 n.8, 117 S. Ct. [at 1053 n.8].
>
> Courts should be cautious not to shortcut this inquiry by identifying a "binary" choice in which an element is either present or not present. Stated otherwise, the vitiation test cannot be satisfied by simply noting that an element is missing from the claimed structure or process because the doctrine of equivalents, by definition, recognizes that an element is missing that must be supplied by the equivalent substitute. If mere observation of a missing element could satisfy the vitiation requirement, this "exception" would swallow the rule.

*Deere*, 703 F.3d at 1356-57 (emphasis added); *accord Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir.

8 - ORDER

2013) (quoting *Deere*). The *Brilliant Instruments* court explained further:

> The vitiation test cannot be satisfied merely by noting that the equivalent substitute is outside the claimed limitation's literal scope. Rather, vitiation applies when one of skill in the art would understand that the literal and substitute limitations are not interchangeable, not insubstantially different, and when they do not perform substantially the same function in substantially the same way, to accomplish substantially the same result. In short, saying that a claim element would be vitiated is akin to saying that there is no equivalent to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests.

*Brilliant Instruments*, 707 F.3d at 1347. These are factual issues for determination by the jury. *Id.*

The cases cited by the defendants where courts have found vitiation are both distinguishable on their facts, and overruled to the extent they predated, and reached contrary results to, *Deere* and *Brilliant Instruments*.

The court agrees with the defendants that no further discovery is necessary for the court to rule on their motion for summary judgment. It is apparent to the court from the record already existing in this case that there are genuine factual issues as to whether Heraeus's accused products infringe the '504 Patent under the DOE. Accordingly, pursuant to the discretion afforded the court under Rule 56(d)(1), the defendants' motion for summary judgment (Dkt. #73) is **denied**, without prejudice to the reassertion of their arguments, if appropriate, in any subsequent dispositive

9 - ORDER

motion filed pursuant to the case schedule to be determined in this matter. As a result of this ruling, DuPont's motion for Rule 56(d) discovery (Dkt. #86) is **moot.**

IT IS SO ORDERED.

Dated this 7th day of June, 2013.

/s/ Dennis J. Hubel

_____
Dennis James Hubel
Unites States Magistrate Judge

10 - ORDER